RG-99-01                                              1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Alejandro Narváez Cruz<br>    Recurrente<br><br>v.<br><br>Hon. Demetrio Torre Rada<br>Registrador de la Propiedad<br>Sección Primera de Carolina<br>    Recurrido | Recurso Gubernativo<br><br>2002 TSPR 1<br><br>155 DPR \_\_\_\_ |

Número del Caso: RG-1999-1


Fecha: 4/enero/2002


Abogado de la Parte Recurrente:
                        Lcdo. Lucas M. Irisarri Castro


Abogado de la Parte Recurrida:
                        Por Derecho Propio

        Este documento constituye un documento oficial del Tribunal
    Supremo que está sujeto a los cambios y correcciones del proceso
    de compilación y publicación oficial de las decisiones del
    Tribunal. Su distribución electrónica se hace como un servicio
    público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Alejandro Narváez Cruz

     Recurrente

       v.

                                  RG-99-1     Recurso
Hon. Demetrio Torre Rada                       Gubernativo
Registrador de la Propiedad
Sección Primera de Carolina

     Recurrido

**Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez.**

San Juan, Puerto Rico, a 4 de enero de 2002.

¿Puede un heredero forzoso inscribir a su nombre la titularidad sobre un bien inmueble que le fue legado, por su causante, sin contar con el consentimiento de todos los demás herederos forzosos para la entrega del referido inmueble?  Mediante el presente recurso gubernativo, el recurrente acude ante nos solicitando la revisión de la denegatoria del Registrador de la Propiedad respecto a la inscripción de la escritura pública sobre aceptación de herencia y entrega de legado.  El Registrador señaló como fundamentos para la referida denegatoria la posible inoficiosidad del legado, así como la falta de ratificación de la

entrega del mismo por todos los herederos forzosos de la causante.    Veamos.

I

El 25 de agosto de 1985, la señora Ramona Cruz Ayala otorgó un testamento cerrado.    Falleció en estado de viudez el 14 de agosto de 1990.    Al momento de su fallecimiento le sobrevivieron diecisiete (17) hijos y tres (3) nietos.    A tenor con la Resolución de 31 de agosto de 1990, dictada por el entonces Tribunal Superior de Puerto Rico, Sala de Carolina, el referido testamento fue protocolizado, mediante el acta número seis (6) otorgada ante el notario John Medina Lugo el 20 de septiembre de 1990, en la municipalidad de San Juan.[1]

En el referido testamento cerrado, la causante no instituyó herederos, ni dispuso de la totalidad de su herencia, razón por la cual se presentó ante el Tribunal de Primera Instancia una petición de declaratoria de herederos.    Mediante la Resolución de 22 de septiembre de 1994, el antiguo Tribunal de Distrito, Sala de Carolina, declaró como herederos abintestato de la causante a sus diecisiete (17) hijos sobrevivientes y a sus tres (3) nietos, hijos de un hijo que le premurió.[2]    En el testamento cerrado, la causante ordenó un legado de un bien inmueble a su hijo, el señor Alejandro Narváez Cruz, aquí recurrente.    El bien inmueble legado consistía en un apartamento residencial, que responde al número 1202 del Condominio Marbella del Caribe Este, localizado en el Municipio de Carolina.    Alega el recurrente que dicho inmueble lo pagó él y lo inscribió a nombre de su madre, la causante.[3]

---

[1] Apéndice II del Recurso Gubernativo, págs. 5-10.

[2] Apéndice IV del Recurso Gubernativo, págs. 13-15.

[3] Según la inscripción cuarta de la finca número 27,796, correspondiente al apartamento legado, la titular era la señora Juanita Narváez Cruz, hija de la causante.    Posteriormente, la causante adquirió de su hija, señora Juanita Narváez Cruz, el referido apartamento, según surge de la inscripción séptima de la referida finca.    Cabe señalar, que la señora Juanita Narváez Cruz, es uno de los herederos forzosos que no ha ratificado la entrega del legado.    Véase, Alegato del Registrador, pág. 5.

El Departamento de Hacienda de Puerto Rico expidió el 7 de febrero de 1995 la Certificación de Cancelación de Gravamen sobre el caudal hereditario.[4] De dicha certificación surge que el caudal hereditario estaba constituido por el referido inmueble y por una cantidad de dinero líquida depositada en un banco.[5] Al momento del fallecimiento de la causante, el apartamento tenía un valor en el mercado de cien mil dólares ($100,000), estaba gravado por una hipoteca a favor de Santander Mortgage Corporation, cuyo balance adeudado era de treinta y ocho mil dólares ($38,000). Por otro lado, la cantidad de dinero depositada en el banco ascendía a la suma de veinte mil dólares ($20,000).

La coheredera, señora Ana Magdalena Narváez Cruz, le entregó el inmueble legado a su hermano, el señor Alejandro Narváez Cruz, aquí recurrente, mediante escritura pública de Aceptación de Herencia y Entrega de Legado número veintitrés (23) otorgada ante el notario Lucas Manuel Irisarri Castro, el 16 de mayo de 1994, en Carolina, Puerto Rico.[6] La mayoría de los herederos ratificaron la entrega del referido legado, mediante escritura pública. Once (11) hijos[7] y un (1) nieto de la causante comparecieron ante el referido notario con la finalidad de ratificar la entrega del legado antes aludido.

El 28 de octubre de 1998, el licenciado Torre Rada, Registrador de la Propiedad de la Sección Primera de Carolina, calificó preliminarmente el documento, concluyendo que de la escritura pública de Aceptación de Herencia y Entrega de Legado no surgía la comparecencia o adecuada representación **de todos** los herederos forzosos de la causante, a tenor con la resolución

---

[4] Apéndice III del Recurso Gubernativo, págs. 11-12.

[5] Íd., pág. 12.

[6] Apéndice I del Recurso Gubernativo, págs. 1-4.

[7] Según surge del expediente de este Tribunal y de los documentos presentados ante el Registro de la Propiedad, tres (3) de los herederos forzosos, hijos de la causante, ratificaron la entrega del legado, mediante documento público otorgado en Estados Unidos. Dichos documentos fueron protocolizados mediante el Acta de Protocolización número 34, otorgada ante el notario Irisarri Castro. Véase, Apéndice 15 del Recurso Gubernativo, págs. 50-58.

sobre declaratoria de herederos.[8]  Señaló, además, que éste último documento debió presentarse por separado.[9]  El Registrador de la Propiedad se limitó a mencionar los Artículos 733, 692, 745 y 735 del Código Civil de Puerto Rico,[10] correspondientes a la legítima y su respectiva limitación a la voluntad del testador para disponer de sus bienes.  El 10 de noviembre de 1998, el recurrente presentó la correspondiente solicitud de recalificación,[11] arguyendo que faltó un solo heredero por comparecer en la escritura y que el Registrador de la Propiedad no tiene facultad para presumir que un legado es inoficioso.[12]

El 25 de enero de 1999, el Registrador recurrido, licenciado Torre Rada, reafirmó su calificación original y, denegó la inscripción de la escritura pública de Aceptación de Herencia y Entrega de Legado, consignando la anotación preventiva de rigor por el término legal de sesenta (60) días.[13]

El 5 de febrero de 1999, el señor Narváez Cruz recurrió ante nos mediante el correspondiente recurso gubernativo, esbozando las siguientes objeciones a la calificación final del Registrador:

> Primera objeción.– Erró el Honorable [sic] Registrador al entender que habiéndose legado un inmueble específico por vía de testamento, se hace necesario, no obstante, inscribir sobre ese inmueble el derecho hereditario a favor de los herederos.

> Segunda objeción.– Erró el Honorable [sic] Registrador, al dictaminar que a la entrega del legado tienen que comparecer todos los herederos, resultando insuficiente la comparecencia de uno o de varios.

El recurrente argumenta que el derecho hereditario accede al Registro por vía de inscripción y no a través de una anotación preventiva.[14] Refiriéndose al Artículo 95 de la Ley Hipotecaria,[15] señala que es

---

[8] Apéndice V del Recurso Gubernativo, pág. 16.

[9] Íd.

[10] 31 L.P.R.A. secs. 2345, 2281, 2371 y 2361.

[11] Apéndice VI del Recurso Gubernativo, pág. 17.

[12] Íd.

[13] Apéndice XVII del Recurso Gubernativo, pág. 63.

[14] Recurso Gubernativo, pág. 5.

[15] 30 L.P.R.A. sec. 2316.

inscribible el derecho hereditario a favor de todos los que resultaren herederos, cuando se trate de bienes adquiridos por herencia y no se haya efectuado aún la partición.[16] Al aludir al Artículo 50.1 del Reglamento Hipotecario,[17] señala que está expresamente prohibida la inscripción del derecho hereditario cuando la propiedad inmueble, perteneciente al causante, fue legada. Sostiene que el legado de cosa específica, propia del testador, se transmite al legatario desde la muerte del testador.[18] Aduce, que los bienes legados no forman parte del caudal hereditario, razón por la cual los herederos no pueden inscribir a su favor el inmueble legado, excepto cuando el legatario renuncia al legado o cuando por sentencia judicial éste sea declarado inoficioso.[19]

En lo que respecta a su segundo señalamiento, el recurrente sostiene que el legatario tiene que reclamar la entrega del legado al heredero o al albacea.[20] La posesión jurídica sobre el bien legado la recibe únicamente del heredero, independientemente de quién disfrute de facto la posesión material o la mera tenencia.[21] Sostiene, además, que la entrega del legado por parte del heredero no guarda relación con la protección de la legítima. Aduce que un Registrador de la Propiedad no es juez, por tanto no tiene facultad adjudicativa sobre controversia alguna, más aún cuando éstas no han sido planteadas.[22] Por último, arguye que el Registro de la Propiedad no fue diseñado como un mecanismo para proteger la legítima de los herederos

---

[16] Recurso Gubernativo, pág. 5.

[17] Íd., pág. 6. Además de la mención de la Regla 50.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, hace referencia a los Artículos 803 y 804 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 2492 y 2493, respectivamente.

[18] Recurso Gubernativo, pág. 6.

[19] En apoyo de su posición, la parte recurrente cita los Artículos 50.1 y 71.5 del Reglamento Hipotecario. Recurso Gubernativo, pág. 6.

[20] Íd., pág. 9.

[21] Íd.

[22] Íd., págs. 11-12.

forzosos.[23]  La protección de la legítima le corresponde a los herederos legitimarios, si les interesa.[24]

El 1ro. de marzo de 1999, el Registrador presentó su alegato, mediante el cual sostiene el ejercicio de su función calificadora como Registrador de la Propiedad en el caso de autos.[25]  Señala que un Registrador de la Propiedad debe pasar juicio sobre la validez de los documentos presentados, a la luz de las leyes vigentes y de las constancias del Registro.[26]  Sus principales argumentos en apoyo de la denegatoria de inscripción de la escritura pública de Aceptación de Herencia y Entrega de Legado se basan en la posible inoficiosidad del legado[27] y en que la entrega del legado no fue ratificada por todos los legitimarios.  Aduce que para la válida inscripción de la referida escritura pública, y en ausencia de partición y adjudicación de los bienes hereditarios, se debe demostrar que se ha cumplido con lo dispuesto por el Artículo 735 del Código Civil, supra.[28]  Por otro lado, señala que a los efectos del Registro de la Propiedad, la resolución sobre declaratoria de herederos es un documento principal, que puede ser objeto de inscripción separada.[29]  Finalmente, ante la alegación de que el recurrente pagó el apartamento legado, el Registrador de la Propiedad expresó en su alegato que éste puede, como alternativa, retrotraer la compra del apartamento de la causante.[30]

Examinado el expediente y evaluados los argumentos de las partes, resolvemos.

---

[23] Íd., pág. 12.

[24] Íd.

[25] Alegato del Recurrido, pág. 4.

[26] Íd.

[27] Alegato del Recurrido, pág. 4 et seq.

[28] El Artículo 735 del Código Civil define legítima como "la porción de bienes de que el testador no puede disponer por haberla reservado la ley a determinados herederos, llamados por esto herederos forzosos".

[29] Alegato del Recurrido, pág. 6.

[30] Íd., pág. 7.

II

La controversia en este caso se circunscribe a dos instancias, a saber: (1) si es necesario que todos los herederos forzosos comparecieran y/o ratificaran la escritura pública de aceptación de herencia y entrega de legado; y (2) si procede la inscripción del derecho hereditario sobre el bien específicamente legado. Discutiremos, en primer lugar, la cuestión relacionada a la comparecencia de los herederos forzosos al acto de entrega del legado.

El apartamento en cuestión constituye un legado de cosa específica y determinada. El legatario de cosa específica y determinada adquiere su propiedad desde la muerte del causante,[31] sin embargo, constituye una propiedad especial, condicionada y con consecuencias distintas de la verdadera propiedad.[32] El Artículo 807 del Código Civil de Puerto Rico dispone que "el legatario no puede ocupar por su propia autoridad la cosa legada, sino que debe pedir su entrega y posesión al heredero o al albacea cuando éste se halle autorizado a darla".[33] Este artículo limita la propiedad que el legatario adquiere de forma automática con la muerte del causante, ya que el legatario no puede disponer libremente del bien legado inmediatamente, sino que tiene que esperar que los herederos o el albacea autorizado le hagan entrega del mismo.[34] Es una condición limitativa del dominio, pues "si se transmite la propiedad desde la muerte del testador, y éste tiene como principal atributo el jus usandi, disponendi y reivindicandi, se pudiera estimar que al limitársele ese derecho al legatario, o no se le transmite la propiedad o el dominio es uno especial, huérfano de los mencionados atributos".[35] Sin lugar a dudas existen "diferencias fundamentales entre el verdadero dominio y el derecho que le

---

[31] Artículo 804 del Código Civil, 31 L.P.R.A. sec. 2493.

[32] J.M. Manresa y Navarro, Comentarios al Código Civil Español, 8va ed., Madrid, Ed. Reus, 1973, T. VI, Vol. II, pág. 543.
[33] 31 L.P.R.A. sec. 2496.

[34] J.M. Manresa y Navarro, op. cit., pág. 539.

[35] Íd.

asigna el Código [Civil] al legatario de cosa específica", derecho que el Código denomina propiedad.[36]   Por su parte, el comentarista Díaz Cruz (hijo) entiende que no se produce en realidad la transmisión del derecho de propiedad, sino que es una propiedad especialísima, la cual debe llamarse "propiedad legataria", pues mientras no se efectúe el acto de entrega no se produce una verdadera transmisión del dominio.[37]   La condicionada transmisión automática del dominio sobre el bien legado al legatario, responde a consideraciones prácticas, revestidas de interés público, a saber: saldar las deudas del causante (primero es pagar que heredar), la holgada protección de las legítimas y, la suficiencia de bienes relictos para el pago de los respectivos legados.   Sobre este particular, el profesor González Tejera señala lo siguiente:

> Permitir al legatario apoderarse de la cosa objeto del legado, con meramente acreditar la muerte del testador y presentar copia del testamento, produciría múltiples inconvenientes a la sucesión.   El testamento podría ser impugnado, planteándose problemas de cobro de lo indebido; **los poseedores de los bienes relictos podrían tener válidas reclamaciones que oponer al heredero albacea; <u>los bienes pueden no ser suficientes para pagar todos los legados; el legado puede ser ineficaz total o parcialmente; el legado puede lesionar la legítima de un heredero forzoso; los bienes pueden no ser suficientes para cubrir deudas y gastos</u>, lanzándose los acreedores a litigar con los legatarios, a litigar entre sí, en los casos donde la ley o el testador establece preferencias de unos legatarios sobre otros.**   Por ello, la norma jurídica de que el legatario deberá pedir la entrega de la cosa y no ocuparla por su cuenta, está revestida de interés público porque, en adición a todo lo apuntado, propende a conservar la paz social pues evita las confrontaciones que de ordinario se producen cuando se ocupan bienes y evita la litigación en torno a los extremos antes apuntados.[38]   (Énfasis y subrayado nuestro.)

Como mencionáramos anteriormente, el legatario no puede posesionarse de la propiedad legada, sino que debe esperar que le sea entregada por el o los herederos o el albacea autorizado.[39]   No obstante, la Ley Hipotecaria y del Registro de la Propiedad contiene disposiciones dirigidas a proteger

---

[36] Íd., págs. 539 y 543.

[37] Mario Díaz Cruz (hijo), <u>Los Legados</u>, Madrid, Ed. Reus, 1951, págs. 677-678.

[38] Efraín González Tejera, <u>Derecho Sucesorio Puertorriqueño</u>, San Juan, Ed. Ramallo, 1983, Vol. I, págs. 352-353.

[39] Luis Rafael Rivera Rivera, <u>Derecho Registral y Mobiliario Puertorriqueño</u>, 1ra ed., San Juan, Jurídica Editores, 2000, pág. 447.

los derechos de los legatarios sobre los bienes inmuebles que le fueran legados.   El Artículo 112(4to) de la Ley Hipotecaria dispone que el legatario de derechos sobre un bien inmueble determinado puede anotar preventivamente su derecho sobre el referido inmueble, siempre que no sea, a su vez, legatario de parte alícuota o heredero.[40]   El aspecto teleológico de la anotación preventiva del derecho legatario sobre el bien inmueble legado, es proteger al legatario durante el período entre la muerte del causante y la partición, ya que el juicio de testamentaría solo está disponible para los herederos y legatarios de parte alícuota.[41]   Tanto el legatario de parte alícuota como el heredero pueden defender sus derechos en el acto de partición de la herencia.

De conformidad con el Artículo 50.1 del Reglamento Hipotecario, supra, el legado de cosa específica se separa del cuerpo general de la herencia desde el momento de la muerte del testador, **siempre y cuando quepa en la porción de los bienes de los que el causante podía disponer libremente, ya que el legatario puede ser privado de su propiedad, total o parcialmente, si su legado mengua la legítima de los herederos forzosos.**[42]   Por el contrario, si existen bienes suficientes en la herencia para cubrir los gastos y deudas, pagar las legítimas y solventar las demás obligaciones, acreditados esos hechos con un inventario fiel y exacto del caudal, con su correspondiente avalúo, el heredero o albacea no debe demorar en entregar

---

[40] 30 L.P.R.A. sec. 2401 (4to).  Dicho artículo lee, en lo aquí pertinente, como sigue:

> 4to. El legatario de derechos sobre bienes inmuebles determinados, siempre que no lo sea también de parte alícuota del caudal hereditario o heredero.

[41] Íd.  Véase además, Mario Díaz Cruz (hijo), op. cit., pág. 673; Eduardo Vázquez Bote, Tratado Teórico Práctico y Crítico de Derecho Privado Puertorriqueño, Orford, New Hampshire, Ed. Butterworth Legal Publishers, Vol. XIV, 1992, pág. 338.

[42] J.M. Manresa y Navarro, op. cit., pág. 538.

el legado.[43]   A tales efectos, los comentaristas Díez-Picazo y Antonio Gullón

señalan que:

> **La entrega del legado por el albacea o contador-partidor facultado**
> **para ello debe de hacerse una vez que haya precedido la liquidación**
> **y partición general de la herencia, porque solamente así puede**
> **saberse si cabe dentro de la cuota de la que puede disponer el**
> **testador y no hay que reducirlo como protección de la legítima**
> **de los herederos forzosos, <u>salvo que éstos concurran a la entrega</u>**
> **<u>o manifiesten su conformidad en que ésta se efectúe sin cumplir</u>**
> **<u>dicha formalidad</u>.**[44]   (Énfasis y subrayado nuestro.)

El comentario anterior propone que cuando el legado lesione la

legítima, la entrega debe contar con el consentimiento de los herederos

forzosos.   A tenor con lo anterior, **si existen herederos legitimarios, como**

**en el presente caso, "la entrega de legados o la percepción directa de éstos**

**por los legatarios, está sometida a la previa constatación de que no resulta**

**violada la legítima".**[45]   **Ciertamente, "los legitimarios están facultados**

**para oponerse a la [entrega del legado] que les sea perjudicial", razón por**

**la cual pueden y deben "intervenir para que sus derechos no resulten**

**desconocidos o vulnerados".**[46]

En el presente caso, según el certificado de cancelación de gravamen

expedido por el Departamento de Hacienda surge claramente que el caudal

relicto estaba compuesto por una cantidad de dinero líquida depositada en

un banco, ascendente a la suma de veinte mil dólares ($20,000), además del

referido apartamento legado, valorado en cien mil dólares ($100,000), el

cual reflejaba una deuda hipotecaria de treinta y ocho mil dólares ($38,000).

De la faz de los documentos del expediente ante nos, así como de los

documentos presentados ante el Registro de la Propiedad surgen dos

---

[43] González Tejera, <u>op. cit.</u>, pág. 361, citando a Castán Tobeñas, <u>Derecho Civil Español Común y Foral</u>, 7ma ed., Madrid, Ed. Reus, 1973, T. VI, Vol. II, pág. 288, <u>et seq.</u>

[44] Luis Díez-Picazo y Antonio Gullón, <u>Sistema de Derecho Civil</u>, 7ma ed., Madrid, Ed. Tecnos, 1997, Vol. IV, pág. 425.

[45] De los Mozos, <u>Comentarios al Código Civil y Compilaciones Forales</u>, 2da ed., Madrid, (Dirigidos por Manuel Albaladejo García y Silvia Díaz Alabart), Ed. Revista de Derecho Privado, 1998, T. XII, Vol. I, pág. 425.

[46] Íd.

situaciones: (1) la posibilidad de inoficiosidad del legado;[47] y, (2) que no todos los herederos forzosos ratificaron la entrega del apartamento legado.  Si bien la causante legó el apartamento a su hijo, aquí recurrente, éste aún no tiene un derecho cierto y seguro sobre el mismo.  Como señaláramos anteriormente, la transmisión automática del dominio sobre el bien legado, está sujeto a que existan bienes suficientes en el caudal hereditario para pagar las deudas del caudal, y a que no se afecten las legítimas.  Además del legatario-legitimario, señor Alejandro Narváez Cruz, aquí recurrente, existen otros herederos forzosos de la causante, a saber: sus dieciséis (16) hijos restantes y sus tres (3) nietos (quienes heredarían por estirpe).  De la resolución sobre declaratoria de herederos, así como de la escritura pública de Aceptación de Herencia y Entrega de Legados y sus subsiguientes ratificaciones, surge que tres hijos y dos nietos de la causante no ratificaron la entrega del bien inmueble legado.[48]

III

Nos corresponde ahora analizar si en efecto es necesario inscribir previamente el derecho hereditario sobre el bien legado específicamente y qué papel juega la resolución judicial sobre declaratoria de herederos y el certificado de cancelación de gravamen expedido por el Departamento de Hacienda en este caso.  Veamos.

La calificación registral constituye la piedra angular del principio de legalidad.  Esta calificación exige del Registrador de la Propiedad un juicio de crítica jurídica sobre la validez y eficacia de los negocios

---

[47] La posibilidad de disponer de legados tiene el límite de no perjudicar la legítima.  Sobre este particular, Albaladejo García nos comenta que:

> Excediendo los legados de la frontera de la legítima, a la que pueden llegar, son *inoficiosos*, y se reducen o anulan, a tenor de ciertas reglas que señalan el Código; cuya idea esencial es que, salvo los que el testador haya declarado preferentes, los demás se reducen proporcionalmente a su valor, hasta dejarlos en el límite permitido.  Manuel Albaladejo García, <u>Curso de Derecho Civil</u>, Barcelona, Ed. Bosch, 1982, T. V, pág. 294.

[48] Los hijos de la causante que no ratificaron la entrega del referido legado fueron las señoras Froilán Narváez Cruz y Juana Narváez Cruz, y el señor Santiago Narváez Cruz.

jurídicos contentivos en los documentos presentados, a través de la cual logramos que sólo tengan acceso al Registro los títulos que cumplen las exigencias legales.[49]  Reafirmamos que esta función calificadora no tiene por objeto declarar la existencia o inexistencia de un derecho dudoso,[50] sino simplemente publicar un derecho real o situación jurídica inmobiliaria.

El objeto de la calificación registral es el examen de legalidad de las formas extrínsecas de los documentos, la capacidad de las partes y la **validez de los actos dispositivos contenidos en las escrituras a base de lo que resulta de ellas y de los asientos del Registro.[51]  Cuando se trata de documentos notariales, el Registrador tiene facultades calificadoras más amplias que le permiten comprobar si el acto jurídico otorgado es válido o nulo**, pero cuando el negocio está sancionado por un tribunal de justicia debe descansar en la presunción de validez de la sentencia.[52]

En el presente caso, la función calificadora del Registrador, aquí recurrido, era comprobar si el acto jurídico contenido en la escritura pública de Aceptación de Herencia y Entrega de Legado, era válido.  A base de un estudio integral de los documentos presentados para la solicitud de inscripción de la referida escritura pública, se desprende claramente **que no consintieron todos los herederos forzosos**.[53]  Entendemos que el Registrador recurrido no declaró que el legado del apartamento fuese un legado inoficioso, sino que se limitó a señalar la falta de consentimiento a la entrega del legado, de parte de varios de los herederos forzosos.  El

---

[49] Alameda Tower Associates v. Muñoz Román, 129 D.P.R. 698, 706 (1992).

[50] Cabrer v. Registrador, 113 D.P.R. 424, 429 (1982).

[51] U.S.I. Properties, Inc. v. Registrador, 124 D.P.R. 448, 465-466 (1989).

[52] Íd.

[53] La partición hecha, por acuerdo unánime de los interesados, es un contrato. Como tal, los coherederos pueden distribuir la herencia de la manera que tengan por conveniente.  Si todos los herederos son mayores de edad y capaces pueden verificar la partición en la forma que tengan por conveniente, sin necesidad de ajustarse al testamento ni cumplir con principio alguno de igualdad cualitativa.  En cambio, cuando hay menores o incapaces, sólo cabe partir simplemente, o sea, hacer cesar la indivisión ajustándose a las reglas del testamento y de la ley.  Sucn. Sepúlveda Barreto v. Registrador, 125 D.P.R. 401 (1990).

Registrador de la Propiedad no tiene facultad para concluir sobre la inoficiosidad de un legado.

Ciertamente, el derecho hereditario de la sucesión de doña Cruz Ayala no puede ser inscrito sobre el apartamento legado. Esta conclusión se desprende del texto de la Regla 50.1 del Reglamento Hipotecario,[54] el cual dispone lo siguiente:

> El derecho hereditario se inscribirá en todas las fincas señaladas por los herederos interesados, como partes del caudal relicto por el causante, pero no como si se hubiese creado un estado de condominio en cada una de las fincas o derechos inscritos a favor del causante, en caso de ser más de un heredero. De igual forma se expresarán las inscripciones de la sentencia de divorcio registrable[s] en virtud del Artículo 1330 del Código Civil [31 L.P.R.A. sec. 3714].

> Podrán inscribirse a favor del heredero único y a su instancia, los bienes y derechos que estuvieran inscritos a nombre del causante, cuando no exista persona autorizada según el título sucesorio para adjudicar la herencia o de haberla[,] cuando coincida la figura del heredero con la de ésta, salvo que en este segundo supuesto la única persona interesada en la herencia resultare ser dicho heredero, con arreglo al testamento presentado.

> Se inscribirá siempre la cuota usufructuaria viudal a favor del cónyuge supérstite que aparezca del título presentado.

> **No se inscribirá el derecho hereditario, ya sea un heredero o más de uno, sobre bienes específicamente legados a menos que, bien por acuerdo con el legatario favorecido o por sentencia judicial, se declare inoficioso el legado o renuncie a él el legatario.** (Énfasis nuestro.)[55]

Inscribir el derecho hereditario sobre el bien específicamente legado, sería una actuación contraria a la disposición reglamentaria anteriormente citada. En este caso la resolución judicial sobre declaratoria de herederos y el certificado de cancelación de gravamen expedido por el Departamento de Hacienda son documentos que se deben incluir como complementarios, por ser necesarios para que el Registrador de la Propiedad pueda calificar la escritura pública de Aceptación de Herencia y Entrega de Legado. En su función calificadora, el Registrador de la Propiedad debe requerir aquellos documentos complementarios que le ayuden a determinar si

---

[54] Art. 50.1 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2003-50.1, Edición Especial.

[55] Véase, además, Rivera Rivera, op. cit.

el negocio jurídico que pretende inscribirse es válido.  Si bien es cierto que una resolución judicial sobre declaratoria de herederos y el certificado de cancelación de gravamen correspondiente, expedido por el Departamento de Hacienda, por sí solos dan base a una inscripción de derecho hereditario sobre los bienes inmuebles del causante en el Registro de la Propiedad, no es menos cierto que en ciertas circunstancias esos documentos no entran al Registro de la Propiedad en calidad de una inscripción separada e independiente y sí como un documento complementario de un negocio jurídico, cuya inscripción se solicita.

Como expresáramos en Sosa v. Registradora de la Propiedad,[56] "el documento complementario no es un documento cuya forma sea de orden inferior a la del documento registrable, sino que incluso puede ser igual o aún superior en muchos casos.[57]  Por consiguiente, reafirmamos que "los documentos complementarios no son documentos de segunda clase".[58]

En el presente caso, a los fines de lograr una calificación adecuada sobre la escritura pública de Aceptación de Herencia y Entrega de Legado, el Registrador de la Propiedad tenía ante sí todos los documentos complementarios necesarios.  Por lo tanto, actuó correctamente al denegar la inscripción solicitada expresando que no todos los herederos forzosos ratificaron la entrega del bien inmueble legado.  En cuanto al requerimiento del Registrador de la Propiedad sobre la previa inscripción del derecho hereditario sobre el apartamento legado, erró, ya que de acuerdo con el Artículo 50.1 del Reglamento Hipotecario, supra, no procede inscribir el derecho hipotecario sobre los bienes legados como inscripción previa, separada e independiente de la calificación de la referida escritura pública.

---

[56] Res. el 26 de junio de 1998, 98 TSPR 82, 145 D.P.R. ___ (1998), 98 J.T.S. 85.

[57] Postura adoptada en Sosa v. Registradora de la Propiedad, supra, págs. 1245-1246.

[58] Sosa v. Registradora de la Propiedad, supra, pág. 1246.

IV

Por los fundamentos antes expuestos, procede confirmar la denegatoria de inscripción que emitiera el Registrador de la Propiedad de Puerto Rico, Sección Primera de Carolina, sobre la escritura pública de aceptación de herencia y entrega de legado, aunque por fundamentos jurídicos distintos.

Se dictará sentencia de conformidad.


                    Efraín E. Rivera Pérez
                    Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Alejandro Narváez Cruz

    Recurrente

       v.

| | | |
|---|---|---|
| | | Recurso |
| Hon. Demetrio Torre Rada | RG-99-1 | Gubernativo |
| Registrador de la Propiedad | | |
| Sección Primera de Carolina | | |

    Recurrido

SENTENCIA

San Juan, Puerto Rico, a 4 de enero de 2002.


Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta sentencia confirmando la denegatoria de inscripción que emitiera el Registrador de la Propiedad de Puerto Rico, Sección Primera de Carolina, sobre la escritura pública de aceptación de herencia y entrega de legado, aunque por fundamentos jurídicos distintos.


Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Presidente señor Andréu García, la Jueza Asociada señora Naveira de Rodón y el Juez Asociado señor Fuster Berlingeri concurren sin opinión escrita.




Carmen E. Cruz Rivera
Secretaria del Tribunal Supremo Interina